Sabita J. Soneji (SBN 224262)
Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
The Tower Building
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
Email: ssoneji@tzlegal.com
         kaizpuru@tzlegal.com

Norman E. Siegel (*pro hac vice*)
Barrett J. Vahle (*pro hac vice*)
Jillian R. Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
Email: siegel@stuevesiegel.com
         vahle@stuevesiegel.com
         dent@stuevesiegel.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRETT HEEGER, ZACH HENDERSON, CALEB RAPPAPORT, and ELIZABETH POMIAK,<br><br>*On Behalf of Themselves and All Others Similarly Situated*,<br><br>         Plaintiffs,<br><br>         v.<br><br>FACEBOOK, INC.,<br><br>         Defendant. | **Case No. 3:18-cv-6399-JD**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs BRETT HEEGER, ZACH HENDERSON, CALEB RAPPAPORT, and ELIZABETH POMIAK (collectively, "Plaintiffs"), through their undersigned attorneys, on behalf of themselves and all persons similarly situated, bring this complaint against Defendant Facebook, Inc. ("Facebook" or "Defendant").

## INTRODUCTION

1.     Facebook is a data aggregation and marketing company cloaked as a social networking platform. Facebook's surface-level social networking platform facilitates the sharing of information, photographs, website links, and videos among friends, family, and coworkers. As Facebook explains, people use Facebook to "connect, share, discover, and communicate with each other on mobile devices and personal computers."[1] In 2018, Facebook had more than 2.3 billion active users.[2]

2.     To encourage use of its social networking platform, which it uses to aggregate and market personal data, Facebook provides multiple mechanisms through which users may access its social media product. These include, but are not limited to, a website accessed through a computer or mobile device's web browser and auxiliary applications such as Facebook and Facebook Messenger created for mobile devices.

3.     Facebook also has privacy settings that appear to give users the ability to share and restrict their private information based on their own specific preferences. But these options are misleading. Although Facebook purports to offer the option to restrict Facebook from tracking, logging, and storing their private location information, it tracks, stores, and uses location information regardless of users' choices.

4.     *First*, Facebook's "Location History" feature allows Facebook to build a history of precise locations received through users' smartphones or other devices. Facebook gives all of its users the option to turn "off" Location History in their Facebook accounts, but selecting that option does not stop Facebook from tracking the location of its users. *Second*, Facebook represents to users with

---

[1] Facebook 2018 Form 10-K, at 5, *available at* http://d18rn0p25nwr6d.cloudfront.net/CIK-0001326801/a109a501-ed16-4962-a3af-9cd16521806a.pdf (last visited Feb. 10, 2020).
[2] *Id.* at 35.

the Facebook application on their mobile devices that if users turn off a setting on their phone called "Location Services," then Facebook will not track, log, or store their location data. But contrary to Facebook's misleading representations, selecting that option *also* does not stop Facebook from tracking the location of its users. In fact, there is *no way* for users to prevent Facebook from surreptitiously tracking their location.

5.      Despite describing Location History and Location Services as settings through which Facebook users can purportedly control location tracking, Facebook exploitatively collects users' location data without those users' consent, regardless of their settings, then highlights the detail and specificity of that data to encourage advertisers to pay Facebook to place their advertisements and uses that data to precisely target its advertiser customers' advertisements to Facebook users. Facebook stores this location data in its servers, sometimes for years, without informing users that it is collecting their location data or keeping records of where users have been, thereby invading users' reasonable expectations of privacy.

6.      Location data is highly sensitive—it reveals not only where an individual is at a particular time, but also other personal information, such as an individual's job, medical treatment, personal relationships, and private interests. Without vindication of individual privacy rights, corporations like Facebook will enjoy unfettered ability to surveil, track, store, and ultimately profit from the most intimate and private details of users' lives.

7.      Facebook's Data Policy tells users that it collects information "from or about computers, phones, or other devices where you install or access our Services, ***depending on the permissions you have granted***," including "specific geographic locations such as GPS, Bluetooth, or WiFi signals" as well as "[c]onnection information such as the name of your mobile operator or ISP, browser type, language and time zone, mobile phone number and IP address."[3] Further, Facebook tells its advertisers that it learns users' locations from "the IP address, WiFi, and Bluetooth data," and

---

[3] Ex. 1, Facebook's Data Policy (last revised September 29, 2016); *see also* Ex. 2, Facebook's Data Policy (last revised April 19, 2018).

allows advertisers to target people "who live in" or "were recently in" a geographic area as small as a single house.[4]

8.      What Facebook omits from its disclosures, however, is that it collects its users' location *regardless of* the permissions they have granted. Upon information and belief and based upon public reports, Facebook uses location data inferred from IP addresses and other data to pinpoint users' locations—such as the street they are on or the building they are in—regardless of a user's privacy settings. For example, even when a user has Location History and Location Services off, Facebook may still display an advertisement for a business to that user because he or she was recently near that business.[5]

9.      Facebook's deceptive acts in this regard are contrary to Facebook's representations about how users can control the personal information that they share with Facebook. Facebook's misleading and untrue statements give average consumers the impression that they can limit the location data that Facebook is allowed to track, log, store, and monetize for advertising purposes.

10.      In essence, Facebook misleads users to believe: "You're in control of who sees your location on Facebook Company Products."[6] But the options offered to users to exert this control— Location History and Location Services—are, in reality, meaningless. Facebook has admitted as much, stating, "There is no way for people to opt out of using location for ads entirely."[7]

---

[4] *See* Dr. Aleksandra Korolova, *Facebook's Illusion of Control over Location-Related Ad Targeting* (Dec. 18, 2018), *available at* https://medium.com/@korolova/facebooks-illusion-of-control-over-location-related-ad-targeting-de7f865aee78; *see also* Korolova, *Facebook's Advertising Platform: New Attack Vectors and the Need for Interventions* (Mar. 27, 2019), *available at* https://arxiv.org/abs/1803.10099.

[5] *See* Korolova, *Facebook's Illusion of Control*, *supra* n.4 (despite turning off both Location History and Location Services, Dr. Korolova was shown ads for specific business because she had been "recently near their business" according to Facebook).

[6] *Privacy Basics, Location*, facebook.com, *available at* https://www.facebook.com/about/basics/manage-your-privacy/location#10 (last visited Feb. 10, 2020).

[7] *Turning Off Facebook Location Tracking Doesn't Stop It From Tracking Your Location* (Dec. 18, 2018), *available at* https://gizmodo.com/turning-off-facebook-location-tracking-doesnt-stop-it-f-1831149148.

11.    By giving users the option to turn Location History off within their accounts and directing them to Location Services in their phone settings as a means to supposedly control Facebook's access to their location data, Facebook offers its users a false sense of security, leading them to believe that they have control over the personal data it collects and stores. Facebook's false assurances are intended to make users feel comfortable continuing to use Facebook and to share their personal information so that Facebook can continue to be profitable, at the expense of user privacy.

12.    Facebook employs users' location information to specifically target its advertisements to users and expose them to content and news tagged with nearby locations. Advertisers pay Facebook to place advertisements because Facebook is so effective at using location information to target advertisements to consumers. Facebook's growth strategy depends on Facebook's ability to collect, store, and ultimately monetize consumer data, including location information. Facebook's "main revenue growth priorities" in 2018 were "(i) helping marketers use our products to connect with consumers where they are and (ii) making our ads more relevant and effective."[8]

13.    Because Facebook systematically and covertly tracks, collects, stores, and uses users' private location information even after users have affirmatively opted not to share their location history nor allowed Facebook to collect and use this information, Plaintiffs bring this class action on behalf of themselves and others similarly situated to vindicate their rights under the California Invasion of Privacy Act, Cal. Pen. Code § 630 *et seq.*,[9] the California Constitution, and state law. Plaintiffs seek compensatory, statutory, and punitive damages, and seek equitable relief, including restitution and an injunction requiring Facebook to stop tracking and collecting users' location data without affirmatively obtaining the consent of those users.

---

[8] Facebook 2018 Form 10-K, *supra* n.1, at 35.
[9] The issue of whether a software application's tracking and recording of users' movements constitutes the use of an "electronic tracking device" under CIPA and whether CIPA requires a tracking device to affirmatively be attached to a "vehicle or other moveable thing" are at issue in a pending motion to certify an order for interlocutory appeal. *See In re: Google Location History Litig.*, Case No. 5:18-cv-05062-EJD, Dkt. 120 (N.D. Cal. Jan. 27, 2020).

**PARTIES**

14.     Plaintiff Brett Heeger is a citizen of California, residing in Los Angeles. Plaintiff joined Facebook in 2004. During the relevant time period, Plaintiff Heeger accessed his Facebook through a web browser on his smart phone and through web browsers on both laptop and desktop computers. Plaintiff Heeger has not used the Facebook app since 2016, but regularly checks Facebook several times a day using a web browser on his cell phone. Plaintiff Heeger expressly attempted to limit Facebook's tracking of his location, and collection and use of this information, by turning the Location History tracking and storage option to "off." In doing so, Plaintiff Heeger relied on Facebook's promise that, if he turned Location History "off," Facebook would no longer log his private location information and would not use this information. Plaintiff Heeger understood Facebook to be representing that it would no longer track, collect, and use his private location information once he had exercised the option to turn Location History off. Because Plaintiff Heeger does not use the Facebook app, there was no Location Services permission to turn off; however, he had disabled Location Services for his web browser, Safari. Nevertheless, Facebook continued to track, store, and use his private location information for targeted advertising without his knowledge or consent even when Plaintiff Heeger did not use the Facebook app or tag his location in posts. Indeed, even though Facebook represented it would not track, store, or use Plaintiff Heeger's location data because he had turned off the Location History feature, Plaintiff Heeger discovered 104 pages of IP addresses showing locations where he accessed his Facebook account spanning from 2014 through August 2018. Plaintiff Heeger suffered damages when he was deprived of control over access to his private location information, and when Facebook collected, stored and used his private location information for targeted advertising without his knowledge or consent.

15.     Plaintiff Zachary Henderson is a citizen of New York, residing in Rochester. Plaintiff Henderson first downloaded the Facebook smartphone app shortly after it was made available. He uses the app to access Facebook daily. He also occasionally accesses Facebook through the Safari web browser on his phone, and occasionally uses the Firefox and Chrome browsers to access Facebook on a laptop. Plaintiff Henderson expressly attempted to limit Facebook's tracking of his location, and collection and use of this information, by turning the Location History tracking and

storage option to "off." Plaintiff Henderson has had Location History turned off for several years. Plaintiff Henderson also attempted to expressly limit Facebook's tracking of his location, and collection and use of this information, by turning Location Services to "off" on his mobile phone. To the best of his recollection, Plaintiff Henderson turned Location Services "off" as to the Facebook app at least one year ago. Plaintiff Henderson relied on Facebook's promise that, if he turned Location History "off," Facebook would no longer build a Location History logging his private location information, and would not use this information. Plaintiff Henderson understood Facebook to be representing that it would no longer track, collect, and use his private location information once he had exercised the option to turn Location History off. Plaintiff Henderson also relied on Facebook's representations that if he turned Location Services off it would cease collecting and using his location information for advertising. Nevertheless, Facebook continued to track, store, and use his private location information for targeted advertising without his knowledge or consent. Plaintiff Henderson suffered damages when he was deprived of control over access to his private location information, and when Facebook collected, stored and used his private location information for targeted advertising without his knowledge or consent.

16.     Plaintiff Caleb Rappaport is a citizen of Tennessee, residing in Hermitage. He has been using the Facebook app for approximately five years and uses it to check Facebook multiple times per day. Much less frequently, Plaintiff Rappaport uses his mobile web browser to access Facebook. Approximately two years ago, Plaintiff Rappaport expressly attempted to limit Facebook's tracking of his location, and collection and use of this information, by turning the Location History tracking and storage option to "off." Around the same period, he attempted to expressly limit Facebook's tracking of his location, and collection and use of this information, by turning Location Services to "off" on his mobile phone. Plaintiff Rappaport relied on Facebook's promise that, if he turned Location History "off," Facebook would no longer build a Location History logging his private location information and would not use this information. Plaintiff Rappaport understood Facebook to be representing that it would no longer track, collect, and use his private location information once he had exercised the option to turn Location History off. Plaintiff Rappaport also relied on Facebook's representations that if he turned Location Services off it would cease collecting and using his location

information for advertising. Nevertheless, Facebook continued to track, store, and use his private location information for targeted advertising without his knowledge or consent. Plaintiff Rappaport suffered damages when he was deprived of control over access to his private location information, and when Facebook collected, stored and used his private location information for targeted advertising without his knowledge or consent.

17.     Plaintiff Elizabeth Pomiak is a citizen of California, residing in San Diego. She uses the Facebook app to access Facebook. Plaintiff Pomiak expressly attempted to limit Facebook's tracking of her location, and collection and use of this information, by turning the Location History tracking and storage option to "off." Around the same period, she attempted to expressly limit Facebook's tracking of her location, and collection and use of this information, by turning Location Services to "off" on her mobile phone. Plaintiff Pomiak relied on Facebook's promise that, if she turned Location History "off," Facebook would no longer build a Location History logging her private location information and would not use this information. Plaintiff Pomiak understood Facebook to be representing that it would no longer track, collect, and use her private location information once she had exercised the option to turn Location History off. Plaintiff Pomiak also relied on Facebook's representations that if she turned Location Services off it would cease collecting and using her location information for advertising. Nevertheless, Facebook continued to track, store, and use her private location information for targeted advertising without her knowledge or consent. Plaintiff Pomiak suffered damages when she was deprived of control over access to her private location information, and when Facebook collected, stored and used her private location information for targeted advertising without his knowledge or consent.

18.     Defendant Facebook, Inc. is incorporated in Delaware and its headquarters are located at 1601 Willow Rd., Menlo Park, California 94025. With over 2.3 billion monthly users, Facebook is the world's leading online social media and networking platform.

**JURISDICTION AND VENUE**

19.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and members of the Class are citizens of different states from Defendant.

20.     Venue is proper in this Court under 28 U.S.C. § 1391 because significant events giving rise to this case took place in this District, and because Facebook is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

21.     Venue is further proper in this Court under Facebook's Terms of Service, which provide: "[A]ny claim, cause of action, or dispute . . . that arises out of or relates to these Terms or the Facebook Products ('claim') . . . will be resolved exclusively in the U.S. District Court for the Northern District of California . . . and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions."[10]

## FACTUAL ALLEGATIONS

### A.     Facebook's Social Media Platform

22.     Facebook is the world's leading online social media and networking platform. Its users can access Facebook from desktop and laptop computers as well as mobile devices, including smart phones and tablets. Facebook's self-proclaimed mission is to "give people the power to build community and bring the world closer together."[11]

23.     In 2018, Facebook had more than 2.32 billion monthly users and 1.52 billion daily active users.[12]

### B.     Facebook Provides Privacy Settings that Lead Reasonable Consumers to Believe that They Have Control over Their Private Location Data and History

24.     Facebook directs users to two settings that they can supposedly use to maintain their location privacy: Location History, a setting that Facebook created and offers its users, and Location Services, a setting on users' mobile phones.

---

[10] *Terms of Service, Facebook, Inc.*, facebook.com, (Date of Revision: July 31, 2019), *available at* https://www.facebook.com/terms.php (last visited Feb. 10, 2020).

[11] *Our Mission,* facebook.com, *available at* https://about.fb.com/company-info/ (last visited Feb. 10, 2020).

[12] Facebook 2018 Form 10-K, *supra* n.4, at 35.

1.      **The Location History Feature in a User's Facebook Settings**

25.      "Location History" is a setting within a user's Facebook account that "allows Facebook to build a history of precise locations received through Location Services on your devices."[13] Facebook represents that if a user "do[esn't] have the [Facebook] app installed, locations cannot be received from the device[,]" *i.e.* if a user has Location History turned off and does not have the Facebook app installed, Facebook represents it will not receive location information on the user.

26.      Users can view Location History by logging into Facebook and accessing the "Settings" tab. Because Location History is "on" by default, Facebook adds current precise location information to users' Location History and builds a detailed chronology of users' location information. According to Facebook, Location History helps users "explore what's around," "get more relevant ads," and "improve Facebook."

27.      However, many Facebook users do not want Facebook to build and keep a precise history of their location. For those users, Facebook offers users the option to turn Location History "off."

28.      Users can turn Location History off by logging into their Facebook account, accessing the "Settings" tab, and choosing "Location." On the Location page, users can toggle the Location History setting to "off." Users can also view the Location History that Facebook has compiled, and purportedly delete it if they choose.

29.      Facebook affirmatively represents to its users that when Location History is off, Facebook will no longer collect and store information about the places that they go. Facebook states that "[w]hen Location History is turned off, Facebook will stop adding new information to your Location History which you can view in your Location Settings."[14] Since Facebook does not disclose that it tracks and stores location information in other places, this representation would lead a

---

[13] Ex. 3, *Location Settings*, facebook.com (Aug. 30, 2018).
[14] *About Location History*, facebook.com, *available at*
https://www.facebook.com/location_history/info/ (last visited Feb. 10, 2020).

1    reasonable consumer to believe that Facebook does not track and store private location data once

2    Location History has been turned off.

3           30.     When users who have turned Location History off view their "Location Settings,"

4    Facebook assures those users that "Your Location History is off" and represents that "[i]f you don't

5    have the [Facebook] app installed, locations cannot be received from the device":[15]



**Location Settings**

> You can change your Location Settings in the app on your device. If you don't have the app installed, locations cannot be received from the device.

**Location History**

Your Location History is off
Facebook builds a history of precise locations received through Location Services on your device.
Only you can see this information and you can delete it by viewing your location history. Learn More.

[View your location history]

This is the only location setting available to users like Plaintiff Heeger, who did not have the Facebook application and who accesses Facebook via a web browser on his phone typically several times a day. Based on Facebook's representation, users like Plaintiff Heeger would reasonably believe that if they did not have the app and turned off Location History, Facebook would not track their location.

           31.     Indeed, if a user who has turned Location History off tries to view their Location History, Facebook again informs the user that "Location History is off." Facebook promises users that their Location History is "private and secure" and that they can "manage" it at any time.[16]

> Location History is off. Turning on Location History lets you explore what's around you, get more relevant ads, and help improve Facebook. It allows Facebook to build a history of precise locations received through your device. Your Location History is private and secure. You can manage it in your location settings at any time.

---

[15] *See* Ex. 3, Facebook Location Settings.
[16] For a Facebook accountholder who has turned Location History off, this image can be seen at *Location History*, *available at* https://www.facebook.com/location_history/view/ (as of October 10, 2018).

32.     Then, in a section of the Facebook website called "Privacy Basics," Facebook again promises users that they can "turn [Location History] on or off in your location settings or delete it at any time within the Facebook app,"[17] giving users the impression that they can delete not only the list of locations that they can see, but also the list of locations that Facebook has created about them.

33.     The feature also misleads users into believing that if it has been turned off, Facebook will no longer track their location, and thus not collect and use their location for targeted advertising.[18]

### 2.     The Location Services Setting In a Facebook Mobile Application User's Phone



34.     "Location Services" is a setting on users' mobile phones that supposedly controls Facebook's access to users' location data. When instructing users how to control Facebook's access

---

[17] *Privacy Basics, Location*, facebook.com, *available at* https://www.facebook.com/about/basics/manage-your-privacy/location#9 (last visited Feb. 10, 2020).
[18] *How to View, Delete & Disable Location History Data That's Been Collected on You* (May 3, 2018) ("Just make sure 'Location History' remains disabled before leaving these settings. Otherwise, Facebook will continue to track your location."), *available at* https://smartphones.gadgethacks.com/how-to/facebook-101-view-delete-disable-location-history-data-thats-been-collected-you-0184527/; *see also Facebook knows everywhere you go – here's how to stop it from tracking you* (Apr. 30, 2019) (explaining users can turn off Location History and Location Services in order to stop Facebook from tracking their locations), *available at* https://www.cnbc.com/2019/04/30/how-to-stop-facebook-from-storing-your-location-history.html.

to their information, Facebook directs users of the Facebook mobile application to the Location Services settings on their phones, where the users can turn off Location Services:[19]



35.     Facebook does not define "precise" location information, or advise that it can obtain a user's location with pinpoint accuracy using their IP addresses and location enhancement methodologies, including methodologies involving Wi-Fi access points, as more thoroughly alleged herein. When a user has turned off Location Services for the application in their phone settings, Facebook represents that "Facebook won't add new information to your Location History from this device, even if Location History is turned on."[20]

36.     Therefore, users who use the Facebook application, like Plaintiffs Henderson, Rappaport, and Pomiak, reasonably believed that by *both* turning off Location History within their account and turning off Location Services for the application in their phone settings, they were preventing Facebook from accessing, tracking, collecting, and using their locations for targeted advertising.

C.     **Facebook Tracks Location Regardless of Privacy Settings**

37.     Notwithstanding these representations and assurances, Facebook tracks, stores, and

---

[19] *Privacy Basics*, facebook.com, https://www.facebook.com/about/basics/manage-your-privacy/location#5 (last visited Feb. 10, 2020).
[20] *See How do Facebook's Location Settings work?*, facebook.com, *available at* https://m.facebook.com/help/278928889350358 (last visited Feb. 10, 2020).

uses Facebook users' location information regardless of their privacy settings.

38.     First, Facebook tracks users' location regardless of whether they have turned off Location History. Location History is an illusory feature that offers users no control whatsoever over Facebook's tracking, collecting, storage, and usage of their location information.

39.      Even when Location History is turned off, users' locations are tracked, stored, and monetized by Facebook. Turning Location History "off" has no impact on whether Facebook is tracking, logging, or using a user's location information. For example, even when a user turns Location History "off," Facebook tracks and stores "Login Protection Data" that shows users' "Estimated location inferred from IP," right down to latitude and longitude on the date and time of login. Facebook also stores "Where You're Logged In," a list of locations where users accessed Facebook according to the date and time of use.

40.     Second, turning off Location Services similarly does not prevent Facebook from learning a user's location and monetizing that information for advertisement placement. Facebook recently admitted that Facebook "target[s] advertisements or otherwise monetize[s] the location information it collects when a user has turned off or limited Location Services."[21] Facebook stated that it "typically" obtains "only" city- or zip code-level location information for users with Location Services turned off—revealing that in some cases it collects far more.[22] Even worse, Facebook admitted that it collects information about individual Wi-Fi networks for devices using any versions of Android or iOS other than the *most current versions*.[23] Information about individual Wi-Fi networks can reveal location information down to the address level, and because your mobile phone scans for WiFi access points Facebook can learn a user's location regardless of whether the user is actually connected to the WiFi or not. These equivocations suggest what academics studying Facebook strongly suspect—that Facebook is able to and does determine a user's location with granularity despite that user's location settings.

---

[21] *See* Facebook Letter to Senators Christopher Coons (D-Del.) and Joshua Hawley (R-Mo), at 6 (Dec. 17, 2019).
[22] *Id.*
[23] *Id.* at 5.

41.     At a minimum, Facebook tracks its' users IP addresses regardless of whether they have affirmatively sought to limit Facebook's ability to track their locations by turning Location History and Location Services "off." Because users frequently access Facebook on their mobile devices, whether via web browser or using the app, this tracking inferred from IP effectively means that Facebook is actively tracking users, at a minimum, whenever they are accessing Facebook in their web browser or through the app.

42.     Facebook obscures that, even when Location History or Location Services are turned off, it continues to track users' approximate location using IP addresses and, in many cases, other information gleaned from Wi-Fi connections.[24]

43.     Facebook goes out of its way to assure users that they are "in control of who sees your location on Facebook Company Products," and that users "can manage" their location information.[25]



_____

[24] Facebook states that "Location-related information can be based on things like precise device location (if you've allowed us to collect it), IP addresses, and information from your and others' user of Facebook Products (such as check-ins or events you attend)." Ex. 2, Data Policy (last revised Apr. 19, 2018), at FB-HE_00000077. But even this is misleading because it does not make clear that Facebook is collecting IP address information *even in cases where users have chosen to limit Facebook's access to their location data.*

[25] *Privacy Basics, Location*, facebook.com, *available at* https://www.facebook.com/about/basics/manage-your-privacy/location#10 (last visited Feb. 10, 2020).

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:18-cv-6399-JD

44.     Prior to April 2018, Facebook represented to users that it collected location information "depending on the permissions you've granted."[26] In April 2018, Facebook updated its terms of service to promise users that it only collects device location "if you've allowed us to collect it[.]"[27]

45.     These representations are misleading with regard to Location History. By providing users with a feature that turns "on" and "off," and which, when turned "on," creates and provides users with a detailed log of their locations, Facebook misleads users into believing it will not track users' locations or use their location information for targeted advertising. In fact, turning Location History "on" or "off" has no impact on whether Facebook collects a user's location data. Curiously, turning Location History "off" only hides the user's Location History from the user himself. But neither setting limits in any way Facebook's collection of that user's location information. Facebook does not disclose (and prior to April 2018 did not disclose) that turning Location History "off" has no impact on Facebook's collection of location information—at a minimum IP address information, and often far more.

46.     These representations are misleading with regard to Location Services because they obscure the fact that Facebook continues collecting IP address information (and in some cases other location information) regardless of whether a user has turned Location Services off.

47.     Even if it is inevitable that Facebook learns a user's IP address because the user is connected to the internet, Facebook is making the choice to keep the information, store it indefinitely, and use it for its own profit.

48.     Facebook's representations and omissions are particularly misleading because Facebook does not disclose the precision with which it is able to determine a user's location based on IP addresses, which is, upon information and belief, precise enough to allow Facebook to identify, for example, whether a user is walking by a specific business. Facebook's use of IP addresses is different from other companies' use of IP addresses because Facebook has access to location data from billions

---

[26] Ex. 1, Data Policy (last revised Sept. 29, 2016), at FB-HE_00000068.
[27] Ex. 2, Data Policy (last revised Apr. 19, 2018), at FB-HE_00000077.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:18-cv-6399-JD

of users dating back over a decade. While IP address data may not always be precise, upon information and belief, Facebook can gather extremely precise location data from IP addresses.[28] Upon information and belief, Facebook is able to discern precise locations from IP addresses due to the massive volume of location data it has mined from users over the years and continues to mine from users.

49.     Facebook can also match IP addresses taken from users who have turned Location Services and Location History off with IP address information taken from users who have *not* limited Facebook's ability to access their location and who have given Facebook access to extremely precise location data, like Wifi access points or GPS—essentially using less privacy-conscious users' precise locations as proxies for more-privacy-conscious users' precise locations. And upon information and belief, Facebook does this in order to obtain precise location data about all its users, without disclosing this practice.[29]

50.     Facebook also does not disclose to users that it uses other avenues to invade users' privacy and track their precise location data. For example, even if a Facebook user has sought to limit Facebook's ability to access his or her location data by turning Location Services and Location History, Facebook can and does receive precise location data about that user from other common apps.[30]

---

[28] *See, e.g.*, *Determining Geographic Locations of Network Devices*, Facebook Patent Application No. US20200036802A1, *available at* https://pdfaiw.uspto.gov/.aiw?PageNum=0&docid=20200036802&IDKey=666EEAFAEE7E (describing process of determining whether "predicted locations of the network address corresponds to a true location of the network address") (last visited Feb. 10, 2020).

[29] *See, e.g.*, Vratonjic *et al.*, *How Others Compromise Your Location Privacy: The Case of Shared Public IPs at Hotspots*, (April 3, 2013), *available at* https://hal.archives-ouvertes.fr/hal-00806568/document.

[30] *See, e.g.*, Privacy International, *How Apps on Android Share Data With Facebook (even if you don't have a Facebook account)* (Dec. 2018), *available at* https://privacyinternational.org/sites/default/files/2018-12/How%20Apps%20on%20Android%20Share%20Data%20with%20Facebook%20-%20Privacy%20International%202018.pdf; Binns *et al.*, *Third Party Tracking in the Mobile Ecosystem* (Oct. 18, 2018), *available at* https://arxiv.org/pdf/1804.03603.pdf; Facebook SDK for Android, *available at* https://developers.facebook.com/docs/android/ (last visited Feb. 5, 2020); Nick Statt, *Some Major Android Apps Are Still Sending Data Directly to Facebook*, The Verge

51.     Facebook carefully guards most of its location collecting practices, and the only way for users to discover any part of this secret tracking and collecting is by downloading all of their data from Facebook and searching through multiple levels of obscure folders (*not* the Location History folder, but rather the "security_and_login_information" folder and the "login_protection_data" and "where_you're_logged_in" subfolders). Downloading and searching one's Facebook data in this manner is only possible on a desktop computer, not on a mobile device, even though many Facebook users primarily or exclusively rely upon their mobile devices for their Facebook interactions. Indeed, users can only turn off Location History on their mobile device, but then are unable to see the tracked location information anywhere but on a desktop computer.

52.     Users like Plaintiffs access Facebook multiple times a day during their usual routines, and Facebook, therefore, has been able to build detailed information about the places users frequent or reside. For example, users access Facebook while waiting to pick up their children from school or daycare, waiting for doctors' appointments, during a lunch with colleagues, during downtime at their desk at work, at their homes at night while in bed, while running errands at their local grocery store or car repair shop or picking up medications from their usual pharmacy, while visiting family members who may be in the hospital, while waiting for a service to begin at their church, mosque, or temple. Any time a Facebook user accesses Facebook via mobile app or web browser while visiting these and other highly sensitive locations, Facebook tracks these locations.

53.     Further, as explained by Professor Aleksandra Korolova, an assistant professor of computer science at the University of Southern California, Facebook essentially allows any person to create ad campaigns to target specific persons based on their locations, meaning that "anyone in the world can create an ad campaign to reach people who have recently visited a particular location, such as a place of worship or an abortion clinic."[31] "And since individuals cannot meaningfully stop

---

(Mar. 5, 2019), available at https://www.theverge.com/2019/3/5/18252397/facebook-android-apps-sending-data-user-privacy-developer-tools-violation.

[31] *See* Korolova, *Facebook's Illusion of Control*, *supra* n.4; *see also Facebook for Business, Ads*, facebook.com, *available at*

Facebook from inferring or using their location for advertising, they also cannot avoid such ads." Dr. Korolova performed an experiment where she turned both Location History and Location Services off. Nevertheless, she was shown advertisements strongly indicating that Facebook was still tracking her precise location. For example, she was shown particular business advertisements because, according to Facebook, she had been "recently near their business."

54.     Facebook's conduct is contrary to users' reasonable expectations of privacy.

55.     The average consumer understands that turning Location History off has a purpose and an effect: to limit Facebook from tracking, logging, storing, and using location information. Reasonable users of Facebook would not expect Facebook to continue tracking, logging, and storing private location information once they have turned Location History off. As Princeton computer scientist and former chief technologist for the Federal Communications Commission's enforcement bureau Jonathan Mayer stated in regard to similar conduct by Google, Inc., "If you're going to allow users to turn off something called 'Location History,' then all the places where you maintain location history should be turned off. That seems like a pretty straightforward position to have."[32]

56.     The average consumer also understands that turning Location Services off with regard to the Facebook app has a purpose and an effect: to limit Facebook from tracking, logging, storing, and using location information. Reasonable users of Facebook would not expect Facebook to continue tracking, logging, storing, and using private location information once they have turned Location Services off.

57.      Facebook profits from users' location information that it surreptitiously collects and stores. Indeed, Facebook admits that it uses location-related information to "personalize" advertisements. Facebook's business model is built upon using personal information, like location information, to provide third party companies with precisely targeted advertising. Allowing users to

---

https://www.facebook.com/business/help/441837073037066?id=176276233019487 (allowing users to target ads at specific street addresses) (last visited Feb. 10, 2020).
[32] Nakashima, Ryan, *AP Exclusive: Google tracks your movements, like it or not*, Associated Press (Aug. 13, 2018), *available at* https://www.apnews.com/828aefab64d4411bac257a07c1af0ecb/AP-Exclusive:-Google-tracks-your-movements,-like-it-or-not.

actually disable Facebook's ability to continuously track their location would thwart Facebook's ability to use their information and profit from such targeted advertising.

**D.    Facebook's Conduct Violates Its Consent Decree with the Federal Trade Commission**

58.    In 2009, the FTC filed a complaint against Facebook for its failure to keep promises it made regarding user privacy.[33] The FTC complaint described a number of failed promises made by Facebook, including:

> 1)  In December 2009, Facebook changed its website, without providing notice to users, so that certain information that users designated as private, such as their Friends List, was made public;

> 2)  Facebook represented to users that they could restrict the sharing of data to limited audiences—for example, restricting data-sharing with "Friends Only"—but their information was still shared with third-party applications installed by users' friends; and

> 3)  Facebook represented that third-party applications that users installed would only have access to users' data that the applications needed to operate but, in fact, the applications had access to all of the users' data, including data not needed to operate.[34]

59.    In 2011, Facebook entered into a twenty-year Consent Decree with the FTC requiring Facebook "not [to] misrepresent in any manner . . . the extent to which it maintains the privacy or security of covered information," including but not limited to "the extent to which a consumer can control the privacy of any covered information maintained by [Facebook] and the steps a consumer must take to implement such controls."[35] "Covered information" includes "Internet Protocol ("IP") address[es]" and "physical location."

---

[33]Fed. Trade Comm'n, Facebook Settles FTC Charges that it Deceived Consumers by Failing to Keep Privacy Promises (Nov. 29, 2011), *available at* https://www.ftc.gov/news-events/press-releases/2011/11/facebook-settles-ftc-charges-it-deceived-consumers-failing-keep (last visited Feb. 10, 2020).
[34] *Id.*
[35] Agreement Containing Consent Order at § 1, *In the Matter of Facebook, Inc.*, File No. 092-3184, *available at*
https://www.ftc.gov/sites/default/files/documents/cases/2011/11/111129facebookagree.pdf (last visited Feb. 10, 2020) ("FTC Consent Order"); *see also* Fed. Trade Comm'n, FTC Approves Final Settlement With Facebook (Aug. 10, 2012), *available at* https://www.ftc.gov/news-events/press-releases/2012/08/ftc-approves-final-settlement-facebook (last visited Feb. 10, 2020).

60.     In violation of the FTC Consent Decree, Facebook has continued to track, log, and store information about users' IP addresses and physical location despite representing to consumers that they have the ability to prevent Facebook from doing so.

61.     Further, on July 24, 2019, the FTC levied a $5 billion fine against Facebook for its violation of the 2012 FTC order by deceiving users about their ability to control the privacy of their personal information.[36] According to the FTC, the fine "is one of the largest penalties ever assessed by the U.S. government for any violation." The FTC also noted that more than 185 million people in the United States and Canada use Facebook on a daily basis and that Facebook monetizes user information through targeted advertising, generating "most of the company's $55.8 billion in revenues in 2018."

**E.**     **The FTC Has Held that Tracking Individuals' Geolocations without Permission (and In Contravention of Their Wishes) Is a Deceptive Trade Practice**

62.     The FTC has expressly found behavior like Facebook's to be a deceptive trade practice in violation of Section 5 of the FTC Act.

63.     In June 2016, the FTC announced that it had entered into a settlement agreement with a mobile advertising company, InMobi PTE, after the agency charged InMobi with deceptively tracking the locations of hundreds of millions of individuals without their knowledge or consent in order to serve them geo-targeted advertising (*i.e.*, advertisements tailored to an individual based on where they live or places they frequent).

64.     In this analogous case, the FTC alleged that InMobi misrepresented that its advertising software would only track consumers' locations when they opted into being tracked, in a manner consistent with their device's privacy settings. According to the FTC Complaint,[37] InMobi was actually tracking consumers' locations regardless of whether the apps using InMobi's software asked

---

[36] Fed. Trade Comm'n, FTC Imposes $5 Billion Penalty and Sweeping New Restrictions on Facebook (July 24, 2019), *available at* https://www.ftc.gov/news-events/press-releases/2019/07/ftc-imposes-5-billion-penalty-sweeping-new-privacy-restrictions (last visited Feb. 10, 2020).

[37] Fed. Trade Comm'n, Mobile Advertising Network InMobi Settles FTC Charges It Tracked Hundreds of Millions of Consumers' Locations Without Permission (June 22, 2016), *available at* https://www.ftc.gov/news-events/press-releases/2016/06/mobile-advertising-network-inmobi-settles-ftc-charges-it-tracked (last visited Feb. 10, 2020).

for consumers' permission to do so and even when consumers denied permission to access their locations.

65.     As a result of the FTC enforcement action, InMobi agreed to pay $950,000 in civil penalties and implement a comprehensive privacy program, including a prohibition from collecting individuals' location information without their affirmative express consent and a requirement that InMobi honor consumers' location privacy settings. The company was required to delete all user location information that it had collected without user consent and was prohibited from further misrepresenting its privacy practices. The settlement also required InMobi to institute a comprehensive privacy program that will be independently audited ever two years for twenty years from the date of settlement.

66.     Facebook's conduct, as alleged herein, mirrors the location tracking activities condemned and sanctioned by the FTC.

## CLASS ALLEGATIONS

67.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs, individually and on behalf of all others similarly situated, bring this lawsuit on behalf of themselves and as a class action on behalf of the following Class:

> All Facebook users in the United States who turned off "Location History" or "Location Services" or both, during the applicable limitations period.

68.     Excluded from the Class are any entities, including Facebook, and Facebook's officers, agents, and employees. Also excluded from the Class are counsel for Plaintiffs, the judge assigned to this action, and any member of the judge's immediate family.

69.     Members of the Class are so numerous that joinder is impracticable. While the exact number of class members is unknown to Plaintiffs, it is believed that the Class is comprised of millions of members geographically dispersed throughout the United States. The Class is readily identifiable from information and records in the possession of Facebook and third parties.

70.     Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual class members because

Facebook has acted on grounds generally applicable to the Class. Such common and legal factual questions include:

      a.    Whether Facebook's acts and practices complained of amount to the use of an electronic tracking device to determine the location or movement of a person in violation of Cal. Pen. Code § 637.7;

      b.    Whether Facebook's acts and practices complained of herein amount to egregious breaches of social norms;

      c.    Whether Facebook acted intentionally in violating Plaintiffs' and Class members' privacy rights;

      d.    Whether Plaintiffs and Class members have a legally protected interest in their location data;

      e.    Whether Plaintiffs and Class members have a reasonable expectation of privacy in their location data;

      f.    Whether Facebook intentionally intruded on Plaintiffs' and Class members' solitude, seclusion or private affairs by tracking, logging, storing, and using their location data without their knowledge or consent;

      g.    Whether Facebook created a condition that was an obstruction to the free use of Plaintiffs' and Class members' location data so as to interfere with the comfortable enjoyment of that data;

      h.    Whether Facebook's act of tracking, logging, storing, and using Plaintiffs' and the Class's location information would reasonably annoy or disturb the ordinary person;

      i.    Whether Facebook has been unjustly enriched by tracking and monetizing Plaintiffs' location data;

      j.    Whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, injunctive relief, restitution, and disgorgement; and

      k.    Whether Plaintiffs and Class members are entitled to actual, nominal, statutory, punitive or other forms of damages, and other monetary relief.

71.    Plaintiffs' claims are typical of the members of the Class, as all members of the Class are similarly affected by Facebook's actionable conduct. Facebook's conduct, which gave rise to the claims of Plaintiffs and members of the Class, is the same for all members of the Class.

72.    Plaintiffs will fairly and adequately protect the interests of the Class because they have no interests antagonistic to, or in conflict with, the Class that Plaintiffs seek to represent. Furthermore,

Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation, including data privacy litigation.

73.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

74.     Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

75.     Facebook has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

76.     Plaintiffs suffer a substantial risk of repeated injury in the future. Although Plaintiffs, like all Class members, wish to control the circumstances under which their location information can be collected and used by Facebook, Facebook has not only shown deliberate indifference to those wishes, but has in fact taken pains to deceive Plaintiffs (and all Class members) and thwart those wishes. Plaintiffs and the Class members are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Facebook from continuing to commit its unfair and illegal violations of privacy.

77.     Facebook is headquartered in and does substantial business in California.

78.     A significant number of Class members are located in, and Facebook aimed a significant portion of its unlawful conduct at, California.

79.     The conduct that forms the basis of each Class member's claims against Facebook emanated from Facebook's headquarters in California, including Facebook's misrepresentations and omissions regarding its access to and collection of users' location information.

80.     California has a greater interest than any other state in applying its law to the claims at issue in this case. California has a very strong interest in preventing its resident corporations from engaging in unfair and deceptive conduct and in ensuring that harm inflicted on resident consumers is addressed. California's interest in preventing unlawful corporate behavior occurring in California substantially outweighs the interest of any other state in denying recovery to its residents injured by an out of state defendant or in applying its laws to conduct occurring outside its borders. If other states' laws were applied to Class members' claims, California's interest in deterring resident corporations from committing unfair and deceptive practices would be impaired.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the California Invasion of Privacy Act

### (Cal. Pen. Code §§ 630, *et seq.*)

81.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

82.     Cal. Pen. Code § 630, part of the California Invasion of Privacy Act (the "CIPA"), provides: "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

83.     Cal. Pen. Code § 637.7 prohibits the use of "an electronic tracking device to determine the location or movement of a person." Under section 637.7(d), an "electronic tracking device" means "any device attached . . . to a movable thing that reveals its location or movement by the transmission of electronic signals."

84.     Without the consent of Plaintiffs or Class members, Facebook tapped into the location data on Plaintiffs' mobile devices and recorded, stored, and used the location information of Plaintiffs and Class members.

85.     Facebook used "electronic tracking devices" to tap into Plaintiff's and each Class members' mobile phone (a "movable thing" under section 637.7(d)), and this technology "reveals its location or movement by the transmission of electronic signals."

86.     Facebook's actions as described herein, engaged in for purposes of acquiring and using the location of mobile phone users and their mobile phones without their consent, violated and continues to violate Cal. Pen. Code § 637.7.

87.     As a result of Facebook's violations of Cal. Pen. Code § 637.7, and pursuant to Cal. Pen. Code § 637.2, Plaintiffs and Class members are entitled to the following relief:

   a.   A declaration that Facebook's conduct violates the California Invasion of Privacy Act;

   b.   Statutory damages and/or trebled actual damages;

   c.   Injunctive relief including but not limited to an order enjoining Facebook from tracking, recording, storing, and using the location Plaintiff and Class members in violation of the CIPA; requiring Facebook to destroy all data created or otherwise obtained from its collection and storage of the location of Plaintiff and Class members and their phones in violation of the CIPA; and requiring Facebook to provide Plaintiffs and Class members with prompt notice of what improper location data collection has taken place;

   d.   An award of attorney's fees and costs of litigation under all applicable law, including but not limited to California's private attorney general jurisprudence, Cal. Civ. Code § 1021.5, and the CIPA.

### **COUNT II**

### **Violation of California's Constitutional Right of Privacy**

88.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

89.     Article 1, Section 1 of the California Constitution expressly provides a right to privacy. This right is enforced through the intrusion tort of invasion of privacy.

90.     Plaintiffs and Class members have a legally protected privacy interest and reasonable expectations of privacy in their location data which Facebook collects from their mobile devices,

laptops and desktop computers, and thereafter stores and monetizes for targeted advertising. Plaintiffs' and Class members' private affairs include their behavior on their mobile phones and any other behavior that may be monitored by surreptitious location tracking. This expectation of privacy is particularly strong where, as here, Facebook provided the option to turn Location History off and directed users to the Location Services setting on their mobile devices, and Plaintiffs and Class members took affirmative action to protect information regarding their location by turning off those settings. Facebook did not disclose that it was continuing to track Plaintiffs' and Class members' locations and to store and use this detailed location information for targeted advertising.

91.     Plaintiffs' and Class members' privacy interest as described herein is legally protected by the law of the State of California because they have an interest in precluding the dissemination or misuse of sensitive information and an interest in making intimate personal decisions and conducting personal activities without observation, intrusion, or interference, including tracking, recording, and storing the locations to which they carry their mobile phones, and using this information for targeted advertising.

92.     Facebook intentionally intruded on Plaintiffs' and Class Members' solitude, seclusion, right of privacy, and private affairs by continuing to track, store, and use detailed location data without their knowledge or consent, including by tracking location data precise enough to reflect when Plaintiffs were near a local business and allowing advertisers to target locations small enough as a single house.

93.     This intrusion is a serious invasion of privacy and is highly offensive to a reasonable person. Various courts, legislatures, regulators, and published articles recognize the importance and sensitivity of location information and the social and privacy harms caused by unauthorized surveillance and location tracking. Facebook's actions alleged herein are particularly egregious because it surreptitiously, and in an unfair and deceptive manner, continued and continues to track Plaintiffs' and Class Members' locations after they affirmatively disabled Location History and/or Location Services. This behavior by Facebook was malicious, oppressive, and willful, and calculated to injure Plaintiffs and Class members in conscious disregard of their rights and in the pursuit of profit.

94.     Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed herein.

95.     Facebook's actions described herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

96.     As a result of Facebook's actions, Plaintiffs and Class members seek damages, including compensatory, nominal, and punitive damages, in an amount to be determined at trial.

<u>**COUNT III**</u>

**Intrusion Upon Seclusion**

97.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

98.     Plaintiffs and Class members have a legally protected privacy interest and reasonable expectations of privacy in their location data which Facebook collects from their mobile devices, laptops and desktop computers, and thereafter stores and monetizes for targeted. This is particularly true where, as here, Facebook provided users the option to turn Location History off and directed users to the Location Services setting on their mobile devices, and Plaintiffs and Class members took affirmative action to protect information regarding their location by disabling these settings. Facebook did not disclose that it was continuing to track Plaintiffs' and Class members' locations and to store and use this detailed location information for targeted advertising.

99.     Plaintiffs' and Class members' privacy interest as described herein is legally protected by the law of the State of California because they have an interest in precluding the dissemination or misuse of sensitive information and an interest in making intimate personal decisions and conducting personal activities without observation, intrusion, or interference, including tracking, recording, and storing the locations to which they carry their mobile phones, and using this information for targeted advertising.

100.     Facebook intentionally intruded on Plaintiffs' and Class Members' solitude, seclusion, and private affairs by continuing to track, store, and use detailed location data without their knowledge or consent, including by tracking location data precise enough to reflect when Plaintiffs were near a local business and allowing advertisers to target locations small enough as a single house.

101.    This intrusion is highly offensive to a reasonable person. Various courts, legislatures, regulators, and published articles recognize the importance and sensitivity of location information and the social and privacy harms caused by unauthorized surveillance and location tracking. Facebook's actions alleged herein are particularly egregious because they surreptitiously, and in an unfair and deceptive manner, continue to track Plaintiffs' and Class Members' locations after they affirmatively disabled Location History on their mobile phones. This behavior by Facebook was malicious, oppressive, and willful, and calculated to injure Plaintiffs and Class members in conscious disregard of their rights and in pursuit of profit.

102.    Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed herein.

103.    Facebook's actions described herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

104.    As a result of Facebook's actions, Plaintiffs and Class members seek damages, including compensatory, nominal, and punitive damages, in an amount to be determined at trial.

## COUNT IV

### Unjust Enrichment

105.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

106.    By collecting, storing, and using Plaintiffs' and Class members' location data without their permission and contrary to their location settings, Facebook was unjustly enriched at the expense of Plaintiffs and Class members. It would be inequitable, unjust, and unconscionable for Facebook to retain the benefit it obtained from using Plaintiffs' and Class members' location data for advertising purposes.

107.    Plaintiffs, on behalf of themselves and the Class, seek disgorgement of all proceeds, profits, benefits, and other compensation obtained by Facebook from its improper and unlawful use and collection of Plaintiffs' and the Class members' location data, as well as all other appropriate relief permitted by law of unjust enrichment, including reasonable attorneys' fees and costs of suit.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:18-cv-6399-JD

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully requests that this Court enter a Judgment:

(a)  Certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

(b)  Finding that Facebook's conduct was unlawful as alleged herein;

(c)  Enjoining Facebook from engaging in further unlawful conduct as alleged herein;

(d)  Awarding Plaintiffs and the Class members nominal, actual, compensatory, consequential, and punitive damages;

(e)  Awarding Plaintiffs and the class members restitution and disgorgement of profits;

(f)  Awarding Plaintiffs and the Class members statutory damages and penalties, as allowed by law;

(g)  Awarding Plaintiffs and the Class members pre-judgment and post-judgment interest;

(h)  Awarding Plaintiffs and the Class members reasonable attorneys' fees, costs, and expenses; and

(i)  Granting such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

Dated: February 10, 2020                    Respectfully submitted,

                                             */s/ Sabita Soneji*
                                             Sabita J. Soneji (SBN 224262)
                                             Katherine M. Aizpuru (*pro hac vice*)
                                             **TYCKO & ZAVAREEI LLP**
                                             The Tower Building
                                             1970 Broadway, Suite 1070
                                             Oakland, California 94612
                                             Telephone: (510) 254-6808
                                             Facsimile: (202) 973-0950
                                             Email: ssoneji@tzlegal.com
                                                    kaizpuru@tzlegal.com

                                             Norman E. Siegel (*pro hac vice*)
                                             Barrett J. Vahle (*pro hac vice*)

Jillian R. Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
Email:  siegel@stuevesiegel.com
         vahle@stuevesiegel.com
         dent@stuevesiegel.com

*Counsel for Plaintiffs*