1  ROSEMARIE T. RING (SBN 220769)
   Rose.Ring@mto.com
2  ANDREW CATH RUBENSTEIN (SBN 295116)
   Andrew.Rubenstein@mto.com
3  MUNGER, TOLLES & OLSON LLP
   560 Mission Street
4  Twenty-Seventh Floor
   San Francisco, California 94105-2907
5  Telephone: (415) 512-4000
   Facsimile: (415) 512-4077
6
   LAURA D. SMOLOWE (SBN 263012)
7  Laura.Smolowe@mto.com
   MUNGER, TOLLES & OLSON LLP
8  350 South Grand Avenue, 50th Floor
   Los Angeles, CA 90071-3426
9  Telephone:  (213) 683-9100
   Facsimile:  (213) 687-3702
10
   ZOE BEDELL (*pro hac vice*)
11 Zoe.Bedell@mto.com
   MUNGER, TOLLES & OLSON LLP
12 1155 F Street N.W.
   Seventh Floor
13 Washington, D.C. 20004-1357
   Telephone: (202) 220-1100
14 Facsimile: (202) 220-2300

15 *Attorneys for Defendant Facebook, Inc.*

16                UNITED STATES DISTRICT COURT

17      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

18

19

20 BRETT HEEGER, ZACHARY            Case No. 3:18-cv-06399-JD
   HENDERSON, CALEB RAPPAPORT, and
21 ELIZABETH POMIAK,                **FACEBOOK, INC.'S NOTICE OF
                                     MOTION AND MOTION TO DISMISS
22          Plaintiff,              FIRST AMENDED COMPLAINT;
                                     MEMORANDUM OF POINTS AND
23     vs.                          AUTHORITIES IN SUPPORT THEREOF**

24 FACEBOOK, INC.,                  Judge:   Hon. James Donato
                                    Date:    May 21, 2020
25          Defendant.              Time:    10:00 a.m.
                                    Crtrm.:  11
26
                                    Trial Date:    None Set
27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................................v

STATEMENT OF RELIEF SOUGHT ......................................................................................v

STATEMENT OF ISSUES TO BE DECIDED ...........................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

I.      INTRODUCTION ......................................................................................................1

II.     PROCEDURAL HISTORY .........................................................................................2

III.    FACTUAL BACKGROUND .......................................................................................3

        A.      Plaintiffs' Settings and the Location-Related Information Allegedly
                Collected ......................................................................................................4

        B.      Facebook's Accurate Disclosures ..................................................................4

IV.     ARGUMENT .............................................................................................................6

        A.      Plaintiffs Fail to Cure the Defects in Their Privacy Claims.............................6

                1.      The FAC Still Fails to Allege What Purportedly "Private"
                        Information Was Actually Collected..................................................6

                2.      The Referenced Documents Fatally Contradict the Claim That
                        Facebook Collects Plaintiffs' Location Information with
                        "Granularity" ...................................................................................7

                3.      Plaintiffs' Allegation that Facebook Can Infer Their Location with
                        Granularity Fails to State a Claim ...................................................10

                        (a)      Plaintiffs cannot establish a reasonable expectation of
                                 privacy ................................................................................10

                        (b)      Plaintiffs do not allege an "egregious breach of social
                                 norms" ................................................................................12

        B.      Plaintiffs Fail to State a Claim Under CIPA ..................................................14

        C.      Plaintiffs Fail to State an Unjust Enrichment Claim .....................................15

V.      CONCLUSION ........................................................................................................15

# **TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................9

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015)....................................................................................15

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017)...............................................................................6

*Cannarella v. Volvo Car USA LLC*,
No. CV 16-6195-RSWL-JEMX, 2016 WL 9450451 (C.D. Cal. Dec. 12, 2016) ......15

*Carpenter v. United States*,
484 U.S. 19 (1987) ...................................................................................................13

*Chevron Corp. v. Donziger*,
No. 12-mc-80237 CRB (NC), 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ..........10

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*,
No.16-mc-80150-JSC, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016).......................10

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................6

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ......................................................................................12

*Gerlinger v. Amazon.Com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004) ......................................................................15

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
316 F. App'x 561 (9th Cir. 2008)........................................................................12, 15

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014)....................................................................................7

*In re Google Location History Litig.*,
No. 5:18-CV-05062-EJD, 2019 WL 6911951 (N.D. Cal. Dec. 19, 2019).......1, 13, 14

*Heeger v. Facebook, Inc.*,
No. 18-CV-06399-JD, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ........... 1, passim

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................................................................13

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*,
No. CV1701875MWFMRWX, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ........................15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................................................................................................9

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................................9

*Lundy et al. v. Facebook, Inc.*
(N.D. Cal., No. 3:18-cv-06793-JD), ECF No. 82 ...............................................................3, 4

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ...................................................................................9

*Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*,
306 F.3d 806 (9th Cir. 2002) ..................................................................................................12

*Moreno v. S.F. BART Dist.*,
No. 17-cv-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ...................................14

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ....................................................................................................9

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996) ..................................................................................................15

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) ...................................................................................................10

*Rosal v. First Fed. Bank of California*,
671 F. Supp. 2d 1111 (N.D. Cal. 2009) .................................................................................15

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ...............................................................................................12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................................................................................................7

*United States v. Acevedo-Lemus*,
No. SACR 15-00137-CJC, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016) ...............................10

*United States v. Jean*,
207 F. Supp. 3d 920 (W.D. Ark. 2016) ...................................................................................10

*United States v. Jones*,
565 U.S. 400 (2012) ...............................................................................................................13

1
2

**TABLE OF AUTHORITIES**
(Continued)

**Page**

3       *United States v. Monroe*,
4           350 F. Supp. 3d 43 (D.R.I. 2018) ................................................................10

**STATE CASES**

5
6       *Catsouras v. Dep't of Cal. Highway Patrol*,
            181 Cal. App. 4th 856 (2010) ...................................................................12
7
8       *Folgelstrom v. Lamps Plus, Inc.*,
            195 Cal. App. 4th 986 (2011) ...................................................................13
9       *Hill v. Nat'l Collegiate Athletic Ass'n*,
10          7 Cal. 4th 1 (1994) .............................................................................6, 12
11      *Planned Parenthood v. Superior Court*,
            83 Cal. App. 4th 347 (2000) ....................................................................12
12
13      *Susan S. v. Israels*,
            55 Cal. App. 4th 1290 (1997) ...................................................................12
14      *Urbaniak v. Newton*,
15          226 Cal. App. 3d 1128 (1991) ..................................................................12

**STATE STATUTES**

16
17      California Invasion of Privacy Act (CIPA) .......................................... 2, passim

**RULES - OTHER**

18
19      Fed. R. Civ. P. 12 ...............................................................................9, 14

20
21
22
23
24
25
26
27
28

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE that on May 21, 2020, at 10:00 a.m., before the Honorable

3   James Donato in Courtroom 11 on the 19th floor of the above-entitled court located in San

4   Francisco, California, Defendant Facebook, Inc. ("Facebook") will and hereby does move to

5   dismiss all claims advanced by Plaintiffs Brett Heeger, Zachary Henderson, Caleb Rappaport, and

6   Elizabeth Pomiak ("Plaintiffs") in this case.  This motion is brought pursuant to Federal Rules of

7   Civil Procedure 12(b)(1) and 12(b)(6) and is based on the Notice of Motion and Motion, the

8   Memorandum of Points and Authorities, the Request for Incorporation by Reference and Judicial

9   Notice, the Declaration of Laura D. Smolowe, all pleadings and papers on file, and such other

10  matters as may be presented to this Court.

11

## STATEMENT OF RELIEF SOUGHT

12      Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Facebook requests that

13  the Court dismiss with prejudice all of Plaintiffs' claims.

14

## STATEMENT OF ISSUES TO BE DECIDED

15      Whether Plaintiffs' First Amended Complaint ("FAC") alleges facts demonstrating Article

16  III standing under Federal Rule of Civil Procedure 12(b)(1) and whether the FAC states a claim

17  upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

On December 27, 2019, this Court properly dismissed Plaintiff Brett Heeger's original Complaint ("Complaint") for failure to state a claim.  Heeger's allegations regarding Facebook's alleged practice of collecting certain location-related information after he turned off a setting called Location History failed to "provide enough facts to undertake the context-specific inquiry" required of privacy claims.  ECF No. 70 ("Order"); *see also Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477, at *3-4 (N.D. Cal. Dec. 27, 2019).  Among other things, Heeger failed to allege the precision of the location data Facebook actually collected or how frequently Facebook supposedly collected or tracked it.  *Id.*  The First Amended Complaint ("FAC"), ECF No. 74, filed on February 10, 2020, fails to cure these fundamental defects and should be dismissed again—this time with prejudice.

As before, the FAC, which now includes three new plaintiffs, fails to specify what, if any, location-related information was *actually* collected by Facebook when their location settings were off.  The FAC's vague allegation that Facebook collected Plaintiffs' "private location information" is not sufficient, as this Court previously held.  FAC ¶¶ 14-17; 2019 WL 7282477, at *4.  Notably, while Plaintiffs rely on a series of reports and articles that purport to show that Facebook theoretically *could* infer locations as precise as a street address in certain circumstances, they *do not* allege that Facebook *actually* inferred Plaintiffs' locations with any precision.  And, the sources themselves, which are incorporated by reference in the FAC, do not actually say that Facebook routinely infers precise locations of users with their location settings turned off down to the street address level, fatally contradicting Plaintiffs' claims otherwise.

Nor could these allegations state viable privacy claims even if Plaintiffs had properly alleged that Facebook collected precise location information about them, which they have not. That is because Plaintiffs fail to allege the frequency with which Facebook supposedly inferred these locations, and because they admit that any collection was only intermittent (only when Plaintiffs accessed the Facebook platform).  As Judge Davila recently held, "[s]uch 'bits and pieces' do not meet the standard" for a privacy violation.  *In re Google Location History Litig.*,

No. 5:18-CV-05062-EJD, 2019 WL 6911951, at *9 (N.D. Cal. Dec. 19, 2019) ("*Google*").  And, this Court previously dismissed the Complaint because, *inter alia*, Plaintiff Heeger had failed to allege "how often Facebook tracked users."  2019 WL 7282477, at *4.  The FAC, even construed in the most generous light, still fails that standard.  Also fatal to their claims, even as alleged, any location inferred was based solely on IP addresses or Wi-Fi information, which Plaintiffs *do not allege are confidential*.  These are not circumstances that can give rise to viable privacy claims.

At bottom, Plaintiffs' lawsuit is based on the notion that Facebook supposedly misrepresented its practices to users, but, importantly, Plaintiffs *elected not to bring a fraud claim* in the FAC.  There is only one conclusion to be drawn from that fact: Plaintiffs knew they could not state such a claim.  To that end, their allegations fundamentally mischaracterize Facebook's actual policies, which in fact clearly disclose which location-related information is collected and when.  Plaintiffs studiously omit Facebook's express statements, contained in the very same disclosures that purportedly contain misrepresentations, that Facebook would continue to collect certain location-related information when the settings were off.  And, in any case, as this Court previously held, even if the disclosures were arguably deceptive (they are not), that would not be sufficient to save the otherwise inadequate privacy claims.  *See* 2019 WL 7282477, at *4.

On top of the defective privacy claims, Plaintiffs have improperly reasserted a claim under the California Invasion of Privacy Act ("CIPA"), which fails because the Court already dismissed this exact claim in its Order, and the FAC's version is unchanged in all material respects.  And, Plaintiffs' new unjust enrichment claim fails because there is a binding contract between the parties, and the FAC fails to plead any unfair action by Facebook requiring restitution.

## II.     PROCEDURAL HISTORY

The Complaint, filed on October 19, 2018, alleged that Facebook continued to track Heeger's "private location information" after he disabled a Facebook application setting called Location History.  ECF No. 1 ("Complaint" or "Compl.") ¶¶ 9, 27.  The Complaint asserted five causes of action: intrusion upon seclusion, invasion of privacy under the California constitution, and violations of the CIPA, California Consumer Legal Remedies Act, and Stored Communications Act.  *Id.* ¶¶ 52-101.  On Facebook's motion, this Court dismissed the Complaint

1    in its entirety on December 27, 2019.  2019 WL 7282477, at *3.  The Court held that the

2    Complaint "fail[ed] to meet the requirement of a 'short and plain statement'" sufficient to allege

3    invasion of privacy claims because it failed to allege the "precision" of the location data Facebook

4    allegedly collected and "how often Facebook tracked users."  *Id.* at *1, *3-4.  The Court explained

5    that privacy claims are highly "context-specific" and that specific allegations are necessary

6    because "a generalized location, such as one that locates a user no more precisely than within

7    several city blocks, may not implicate much in the way of privacy concerns."  *Id.* at *3.

8          With respect to the allegations of deceptive disclosures, this Court made clear that even if

9    the disclosures *were* misleading, that would not be enough to save the privacy claims.  "That is

10   because deceit can be a 'kind of 'plus' factor [that is] significant in establishing an expectation of

11   privacy or making a privacy intrusion especially offensive,'" but "pleading the 'plus' factor alone

12   is not enough to carry the day."  *Id.* at *4.  The Court implicitly invited Plaintiffs to try to make

13   out misrepresentation claims in their amended pleading, if they could do so.  *Id.*

14         As to Heeger's CIPA claim, the Court held that the "plain language of the [Act] does not

15   accommodate technology like a mobile app on a digital device."  *Id.* at *3.  The Court correctly

16   recognized that CIPA's prohibition against use of an "electronic tracking device . . . attached to a

17   vehicle or other movable thing . . . contemplates things like a freestanding GPS unit hidden on a

18   car, but not a downloaded Facebook app of the sort in dispute here."  *Id.* at *3.

19         On February 10, 2020, Plaintiffs filed the FAC, reasserting the claims for intrusion upon

20   seclusion, invasion of privacy, and violation of CIPA, and adding a claim for unjust enrichment.

21   FAC ¶¶ 81-107.  Notably, Plaintiffs *did not* add any claims for misrepresentation, tacitly

22   conceding they could not state such claims.  Facebook brings this motion because the FAC does

23   not remedy the defects already identified by this Court in dismissing the original Complaint.

24   **III.    FACTUAL BACKGROUND**

25         Because the Court is already familiar with the general background relevant to this matter

26   from Facebook's prior motion to dismiss in this case and its motion to dismiss in *Lundy et al. v.*

27   *Facebook, Inc.*, (N.D. Cal., No. 3:18-cv-06793-JD), ECF No. 82, the following section provides a

28   condensed summary and repeats facts only as relevant to the arguments herein.

### A.    Plaintiffs' Settings and the Location-Related Information Allegedly Collected

As in the Complaint, Plaintiff Heeger alleges that he turned off the "Location History" application setting but that Facebook "continued to track, store, and use his private location information."  FAC ¶ 14.  The FAC adds three new Plaintiffs—Zachary Henderson, Caleb Rappaport, and Elizabeth Pomiak—who allegedly turned off not only Location History but also a separate setting on their mobile devices known as "Location Services."  *Id.* ¶¶ 15-17.  The FAC similarly alleges with respect to these additional Plaintiffs that Facebook "continued to track, store, and use [their] private location information" after they turned off Location Services.  *Id.* The FAC now seeks relief on behalf of users who turned off Location History, Location Services, or both.[1] *Compare* Compl. ¶ 43, *with* FAC ¶ 67.

Other than the vague reference to "private location information," the FAC fails to allege what, if any, location-related information Facebook actually collected about Plaintiffs.  Instead, the FAC cites a patchwork of reports and articles that purport to describe the precision with which Facebook can infer user locations *generally*.  FAC ¶¶ 37-53.  But these documents, which are incorporated by reference into the FAC, actually *contradict* Plaintiffs' additional allegations regarding the precision of the data allegedly collected.  *See infra* IV.A.2.

### B.    Facebook's Accurate Disclosures

Like the Complaint, the FAC continues to mischaracterize Facebook's disclosures. Plaintiffs allege that Facebook "affirmatively represent[ed]" that it would not collect and store location information when users turned off Location Services or Location History, FAC ¶¶ 4, 29, but they again do not actually identify any such representation—because there is none.

To create a Facebook account, all users must accept and are bound by Facebook's Terms of Service and Data Policy.  *E.g.*, FAC ¶¶ 7, 21 & n.10, 44.  Facebook describes the Location History and Location Services settings in detail on the "Learn More" page in Location Settings,

---

[1] "Location History" is an application setting that "allows Facebook to build a history of precise locations received through Location Services on [a user] device," and "Location Services" is a device setting" that "helps Facebook provide [users] with location features."  FAC ¶¶ 25, 29; Ex. B (Learn More page).

1  and the Privacy Basics tutorial.[2]  *E.g.*, *id.* ¶¶ 25, 29 & n.14, 32-33 & n.17, 34 & n.19, 43 & n.25;

2  Exs.[3] A & B.  Among other things, these pages state expressly that Facebook may continue to

3  collect or infer certain location-related information when Location Services and/or Location

4  History is off.  *See, e.g.*, Ex. B at 1 (when Location History is off, "*you may still share your*

5  *precise location when you use our products.  For example, we may receive and store location data*

6  *when you check-in, RSVP as attending an event, or post photos that include location information*"

7  (emphasis added)); Ex. A at 6 (when Location Services is off, "*We may still understand your*

8  *location using things like check-ins, events, and information about your internet connection*"

9  (emphasis added)).  Facebook also offers a transparent tool (known as the "Download Your

10  Information" or "DYI" tool) through which users can download reports showing information

11  Facebook has collected about them, including IP addresses and "estimated location[s] inferred

12  from IP" when Location Services and Location History are off.  *E.g.*, FAC ¶ 51.  In fact, the FAC

13  specifically alleges Heeger downloaded these files and found inferred locations there.  *Id.* ¶ 14.

14      Plaintiffs allege they "suffered damages" when they learned that Facebook continued to

15  collect their location-related information after they turned off Location Services or Location

16  History.  *Id.* ¶¶ 14-17.  Yet all Plaintiffs allege they *continue to use Facebook on a daily basis.  Id.*

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25

26  [2] Although Plaintiffs do not include these pages as exhibits to their FAC, the pages are properly
27  incorporated by reference in the FAC because Plaintiffs rely on and cite them repeatedly.  *See* Request for Incorporation by Reference and Judicial Notice, filed herewith ("RIBR").
28  [3] "Ex." references refer to documents attached to the Declaration of Laura D. Smolowe in Support of Facebook's Motion to Dismiss, filed concurrently herewith.

IV.     **ARGUMENT**[4]

     **A.     Plaintiffs Fail to Cure the Defects in Their Privacy Claims**

     When claims for intrusion upon seclusion and invasion of privacy are brought together on the same factual basis, courts conduct a combined inquiry that considers "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Heeger*, 2019 WL 7282477, at *3. Plaintiffs must demonstrate that (1) they had an objectively reasonable expectation of privacy and (2) any invasion of their privacy was "sufficiently serious . . . to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). This inquiry is highly "context specific." *Heeger*, 2019 WL 7282477, at *3. The "privacy interests and accompanying legal standards are best viewed flexibly and in context," and "[t]he extent of a privacy interest is not independent of the circumstances." *Id.*

     This Court previously rejected Plaintiffs' privacy claims because the Complaint "[did] not provide enough facts to undertake the context-specific inquiry into the plausibility of the privacy expectation or the offensiveness of the intrusion." *Id.* at *3. Specifically, the Complaint failed to specify what "private" information was collected, and failed to "state the precision of the location data Facebook is alleged to have collected after users turned off 'Location History.'" *Id.* at *3-4. The FAC fails to remedy these fundamental defects.

          1.     *The FAC Still Fails to Allege What Purportedly "Private" Information Was Actually Collected*

     As in the Complaint, the FAC fails to adequately allege the nature of the location data *actually collected*. With respect to Plaintiffs Henderson, Rappaport, and Pomiak, the FAC alleges

---

[4] Facebook asserts, to preserve the issue, that the FAC fails adequately to allege "injury in fact" for purposes of Article III standing. As described in greater detail in Facebook's motion to dismiss the Complaint, ECF No. 26 at 6-9, there is no statutory standing under CIPA or the California constitution for collection without disclosure, by a mobile app, of the information alleged in this case. *Id.* Plaintiffs also fail to plead any actionable economic injury because they fail to plead the market value of the information or that it *lost* value as a result of Facebook's alleged conduct. *E.g.*, *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784-85 (N.D. Cal. 2019). Plaintiffs fail to plead non-economic injury because they do not have a reasonable expectation of privacy in the information allegedly collected, and they do not allege any disclosure. *E.g.*, *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017).

solely that Facebook "continued to track, store, and use [their] private location information."  FAC ¶¶ 15-17.  But, this Court has already held that such allegations are insufficient: a "bareboned and vague allegation" that "Facebook collected . . . 'private' location data" cannot support a privacy claim.  2019 WL 7282477, at *4.  The FAC alleges that Heeger (but not any of the other Plaintiffs) downloaded his account information and discovered "104 pages of IP addresses showing locations."  FAC ¶ 14.  But the FAC fails to specify the precision of the "locations" that were supposedly shown.  And, in fact, the only 104-page document that Heeger could be referring to does not in fact contain *any locations*, but rather only IP addresses.[5]  Ex. L; RIBR at 2.  This Court should thus disregard that allegation.  *See Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("[W]e 'need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'").

2.      *The Referenced Documents Fatally Contradict the Claim That Facebook Collects Plaintiffs' Location Information with "Granularity"*

Attempting to buttress its vague claim that Facebook "determine[s] a user's location with granularity despite that user's location settings," the FAC cites a series of sources that purport to describe the precision with which Facebook can infer locations of users with their location settings turned off—allegedly down to a single house, a user walking by a business, or a street address. These new allegations are not actionable.  For one thing, the documents, which are incorporated by reference, contradict the allegations.  *See Gonzalez*, 759 F.3d at 1115; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[A] plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims.").  Specifically:

- **Facebook "allows advertisers to target people [in] a geographic area as small as a single house," FAC ¶¶ 7, 92, 100 (citing Exs. D & E):** But the cited sources pertain to *advertisers'* ability to target ads, not the precision of data collected about users.  Ex. E at 3-4.  The only users in the targeted area might have their location settings turned on, or no users might be there at all.

---

[5] In any case, for the reasons discussed *infra* at IV.A.3, locations inferred from IP addresses cannot give rise to privacy claims.

- **"[E]ven when a user has Location History and Location Services off, Facebook may still display an advertisement for a business to that user because he or she was recently near that business" or is "walking by a specific business," FAC ¶¶ 8, 48 (citing Ex. D):** But the researcher in this case was *in the same city* as a business, not "near" or "walking by" the business.  Ex. D at 2.  The source does not support anything more than that Facebook can identify the city of a user.

- **When Location Services is off, Facebook "'typically' obtains 'only' city- or zip code-level location information . . . revealing in some cases it collects far more," FAC ¶ 40 (citing Ex. F):** But the cited source states that the exception to the "typical[]" rule is when Facebook takes extra precautions for safety or security issues, like preventing a suicide.  Ex. F at 6.  This document does not support an allegation that Facebook *routinely* tries to determine location with specificity or does so, for example, for advertising purposes.

- **On prior versions of Android or iOS, Facebook "collects information about individual Wi-Fi networks" when Location Services is off, and such information "can reveal location information down to the address level," FAC ¶ 40 (citing Ex. F):** But the cited source does not say that Facebook *infers location* based on this Wi-Fi information or, if so, how often or the granularity of any such inference.  Ex. F at 5.

- **"Facebook can gather extremely precise location data from IP addresses," citing a Facebook patent application, FAC ¶ 48 (citing Ex. G):** But the application does not say that Facebook can gather "extremely precise" location from IP addresses.  To the contrary, it recognizes that granularity varies based on the source of underlying data and that "predicted locations at different granularity levels may have different probabilities of corresponding to true locations."  Ex. G at 10.

- **Facebook can "match IP addresses" from users with Location Services or Location History on with those users who have those settings off, FAC ¶ 49 (citing Ex. H):** But the cited source does not analyze Facebook's platform or even attribute this conduct to Facebook.  Ex. H at 2.

- **Facebook "can and does receive precise location data about [users] from other common apps" even when Location History and Services are off, FAC ¶ 50 (citing Exs. I, J, and K):** But the Privacy International report, underlying the cited articles, does not say that apps share "*precise* location data" with Facebook.  To the contrary, it says that apps may share "*suspected* location based on *language* and *time zone* settings." Ex. I at 12 (emphasis added).  And the final source does not mention location or analyze Facebook's platform.  Ex. K.

The purpose of the incorporation-by-reference doctrine is precisely to "[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based" or by "selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  Here, Plaintiffs cite these sources generally, "deliberately omitting references" to their actual content, which contradict their claims.  None of the above documents supports Plaintiffs' allegations regarding the precision with which Facebook inferred Plaintiffs' locations, and the Court should reject these allegations.

Perhaps more importantly, the FAC fails to connect any of these source-based allegations to Plaintiffs.  Plaintiffs must plead sufficient "factual content" to permit the Court to "draw the reasonable inference that [Facebook] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs nowhere allege that Facebook in fact engaged in this conduct with respect to *Plaintiffs* or users like Plaintiffs.  That is fatal.  *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971 (9th Cir. 2009) (failure to tie defendants to inappropriate behavior warranted dismissal, and that courts need not make "unwarranted deductions of fact to save a complaint from a motion to dismiss"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (rejecting privacy claim where "it [was] not clear that anyone has actually done so, or what information, precisely, [was] obtained"); *cf. McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022 (N.D. Cal. 2019) (privacy claim viable where the complaint included detailed allegations regarding the specific data collected based on forensic analysis of the relevant internet communications).

1

2

3. *Plaintiffs' Allegation that Facebook Can Infer Their Location with Granularity Fails to State a Claim*

3

Even assuming that Facebook *theoretically can* infer the location of users with location settings turned off down to the street address or business level, and even if the Court did not discount those allegations for the reasons discussed above, Plaintiffs' privacy claims would fail on the merits nonetheless.

4

5

6

(a)   <u>Plaintiffs cannot establish a reasonable expectation of privacy</u>

7

Even if Facebook occasionally inferred Plaintiffs' locations as precisely as a street address or "single house" (the most specific of the allegations), the FAC alleges that any such inferences were based *on IP addresses or information from Wi-Fi connections*. *E.g.*, FAC ¶¶ 14, 40-42. Plaintiffs do not and cannot plausibly allege a reasonable expectation of privacy in such information. As numerous courts have recognized, IP addresses—and a user's sharing of that information—are an essential part of how the internet functions.[6] Plaintiffs can claim "no right to privacy with respect to an IP address because an IP address alone does not provide any personal identifying information." *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No.16-mc-80150-JSC, 2016 WL 5930275, at *5 (N.D. Cal. Oct. 12, 2016); *see also United States v. Acevedo-Lemus*, No. SACR 15-00137-CJC, 2016 WL 4208436, at *4 (C.D. Cal. Aug. 8, 2016) (same); *Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013) (same). As one court recently held, IP address information "does not reveal the kind of minutely detailed, historical portrait of 'the whole of [a person's] physical movements' that concerned the Supreme Court in *Carpenter*." *United States v. Monroe*, 350 F. Supp. 3d 43, 49 (D.R.I. 2018). The FAC does not allege that Wi-Fi connection information is any more sensitive or personally identifiable—and it is not.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Moreover, Facebook accurately represented its practices and repeatedly disclosed that it could continue to collect location-related information when the location settings were off.

24

25

26

27

28

---

[6] An IP address "is always attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet." *United States v. Jean*, 207 F. Supp. 3d 920, 928-29 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 409 (2d Cir. 2004).

1 Plaintiffs were thus told what information Facebook could collect, and when, and cannot

2 reasonably claim they were misled.  While Plaintiffs try to allege that that Facebook's disclosures

3 misrepresented its practices, they notably *did not bring a fraud claim* in the FAC.  That is because

4 there were no actionable misrepresentations.

5       To that end, the FAC fundamentally mischaracterizes Facebook's disclosures.  With

6 respect to Location History, Plaintiffs allege that Facebook "affirmatively represents" that, "when

7 Location History is off, Facebook will no longer collect and store information about the places

8 that they go." FAC ¶ 29; *see also* Ex. B at 1 (Learn More page).  But Plaintiffs omit from the FAC

9 that the very same disclosure makes clear that Facebook continues to collect certain location-

10 related information when Location History is off: "You may still share your precise location when

11 you use our products.  For example, we may receive and store location data when you check-in,

12 RSVP as attending an event, or post photos that include location information."  Ex. B at 1.

13       With respect to Location Services, Plaintiffs allege that they believed that turning off the

14 setting would "prevent[] Facebook from accessing, tracking, collecting, and using their locations

15 for targeted advertising" because of a representation in the Privacy Basics tutorial. FAC ¶ 34; *see*

16 *also* Ex. A at 5 (Privacy Basics).  But that same tutorial, which Plaintiffs again omit from the

17 FAC, actually makes clear that Facebook continues to collect location-related information: "We

18 may still understand your location using things like check-ins, events, and information about your

19 internet connection."  Ex. A at 6.

20       Plaintiffs similarly rely on a statement on a Facebook Help Center page: that "Facebook

21 won't add new information to your Location History from this device, even if Location History is

22 turned on."  FAC ¶ 35; *see also* Ex. C (Help Center page).  But Plaintiffs again fail to mention that

23 Facebook repeatedly discloses on that same page that it may continue to collect location-related

24 information when Location History or Location Services is off, for example:

25       When Location Services and Location History are turned off, we may still
       understand your location using things like check-ins, events and information about
26       your internet connection.  We use this information to provide more relevant and
       personalized experiences, protect your account, and provide better ads.

27

28

Ex. C; *see also* Ex. B (Learn More page).[7]

No reasonable user would misunderstand the above representations as Plaintiffs allege. *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (rejecting alleged understanding as unreasonable, where plaintiffs ignored language immediately next to the challenged language); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008) (same, in light of context and accompanying disclosures); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (same, explaining that "Facebook is not bound by promises it did not make").  To that end, Plaintiff Heeger himself admits that he learned about the information being collected through Facebook's own platform (the DYI tool), FAC ¶¶ 14, 39, 41, tacitly acknowledging that Facebook's disclosures *do* accurately describe its  practice.

In any case, as this Court previously recognized, "deceit" is only a "kind of 'plus' factor" and "alone is not enough to" state a privacy claim.  2019 WL 7282477, at *4.  Even if the disclosures could be construed as deceptive (they cannot), Plaintiffs' privacy claims still fail.

> (b)   Plaintiffs do not allege an "egregious breach of social norms"

The privacy claims fail for the additional reason that the FAC does not and cannot allege an intrusion "sufficiently serious . . . to constitute an egregious breach of the social norms underlying the privacy right."  *Hill*, 7 Cal. at 37.  Plaintiffs must show "an exceptional kind of prying into another's private affairs," *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 819 (9th Cir. 2002), along with public disclosure of highly private facts in sensitive situations, such as disclosing to abortion clinic protesters the names, home addresses, and phone numbers of clinic employees and volunteers; images of an accident victim over the internet; a patient's HIV status to third parties; or confidential mental health records.  *E.g.*, *Planned Parenthood v. Superior Court*, 83 Cal. App. 4th 347 (2000); *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010); *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991); *Susan*

---

[7] The FAC also quotes statements in two different versions of Facebook's Data Policy as purporting to misrepresent Facebook's collection practices.  *See* FAC ¶¶ 7, 44; *see also* ECF No. 74-1; ECF No. 74-2.  But neither of these statements even mentions Location Services or Location History (which the far more specific disclosures above discuss at length), let alone that Facebook stops collecting all location-related information when the settings are off.

1    *S. v. Israels*, 55 Cal. App. 4th 1290 (1997).  The circumstances here, even as alleged, do not come

2    close to meeting that standard.

3         Even assuming that Facebook occasionally inferred Plaintiffs' locations as precisely as a

4    street address or "single house" (although, as discussed *supra*, Plaintiffs have *not* adequately

5    alleged that *their* precise location was in fact collected), this "routine commercial behavior" is not

6    actionable.  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).  Judge

7    Koh's decision in *In re iPhone Application Litigation* is directly on point.  In that case, there was

8    no "egregious breach of social norms" where, as here, the plaintiffs alleged that Apple collected

9    "precise geographic location" even though "Apple represented that users could prevent Apple

10   from collecting [this data] by switching the Location Services setting on their iDevices to 'off.'"

11   *Id.* at 1050-51; *see also Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011)

12   (rejecting claim based on allegedly improper collection of mailing addresses).  In fact, Plaintiffs

13   themselves apparently do not find Facebook's conduct "highly offensive" or "egregious," as they

14   continue to use Facebook on a daily basis, even after learning of the practices they now challenge.

15        Moreover, Plaintiffs allege that Facebook inferred their location *only when they accessed*

16   *Facebook*.  *E.g.*, FAC ¶¶ 14, 41, 52.  In *Google*, Judge Davila dismissed privacy claims based on

17   the alleged collection of "granular and specific" location data where the plaintiffs alleged that

18   Google tracked their locations only when they used Google services.  2019 WL 6911951, at *9.

19   "Such 'bits and pieces' do not meet the standard of privacy established in" *Carpenter v. United*

20   States, 484 U.S. 19 (1987) and *United States v. Jones*, 565 U.S. 400 (2012) in which the location

21   data was "comprehensive" and provided a "rough 'map' of a customer's fluid movements."  2019

22   WL 6911951, at *10.  The allegations here are no different, and the same result should follow.

23        Ultimately, the FAC fails to remedy the basic defect this Court previously identified: there

24   are not "enough facts" to permit the "context-specific" inquiry required of privacy claims.

25   *Heeger*, 2019 WL 7282477, at *3; *see also Google*, 2019 WL 6911951, at *10 (rejecting privacy

26   claims as "far too conclusory and speculative" without alleging which, if any, specific data was

27   collected, whether the data concerned "[a] person's general location," which would not give rise to

28   a privacy claim, or "how often their geolocation was accessed").  As in *Google*, "[a]llowing such

1  conclusory and speculative pleading to survive a Rule 12(b)(6) motion to dismiss would obliterate

2  the 'high bar' set for establishing an invasion of privacy claim."[8]  *Id.* at *10.

3        **B.        Plaintiffs Fail to State a Claim Under CIPA**

4        CIPA prohibits the use of "an electronic tracking device to determine the location or

5  movement of a person," and defines "electronic tracking device" as "any device attached to a

6  vehicle or other movable thing that reveals its location or movement by the transmission of

7  electronic signals." Cal. Penal Code § 637.7(a), (d).  This Court previously held that the "plain

8  language of the CIPA does not accommodate technology like a mobile app on a digital device."

9  2019 WL 7282477, at *3.  CIPA's prohibition against use of an "electronic tracking

10 device . . . attached to a vehicle or other movable thing . . . contemplates things like a freestanding

11 GPS unit hidden on a car, but not a downloaded Facebook app of the sort in dispute here."  *Id.*

12       Despite this clear holding, the FAC has re-alleged a CIPA claim without any substantive

13 amendment.  Instead, the FAC merely changes "Plaintiff" references from singular to plural, and

14 adds a new phrase that Facebook "tapped into the location data on Plaintiffs' mobile devices."

15 *Compare* Compl. ¶ 55, *with* FAC ¶ 77.  These amendments do nothing to remedy the fundamental

16 defect that this Court identified in the Order: a mobile application is neither an "electronic tracking

17 device" nor "attached . . . to a movable thing."  *Heeger*, 2019 WL 7282477, at *3.

18       This Court's rejection of Plaintiffs' CIPA claim comports with not only plain statutory

19 meaning[9] but also every decision to have considered whether CIPA applies to collection of

20 location data by a mobile application.  Most recently, in *Google*, Judge Davila rejected a claim

21 that Google's allegedly improper collection of location data from mobile devices violated CIPA,

22 recognizing that Google software installed on the devices is "not a 'device' within the meaning of

23 [CIPA]."  2019 WL 6911951, at *6; *see also Moreno v. S.F. BART Dist.*, No. 17-cv-02911-JSC,

24

---

25 [8] The FAC speculates that users access Facebook at school, doctors' offices, work, home, places
   of worship, and other locations.  FAC ¶ 52.  But the FAC again fails to allege that Facebook
26 *actually* collected location information regarding Plaintiffs in these locations.  Such allegations do
   not suffice.  *See Google*, 2019 WL 6911951, at *10 (rejecting as "entirely speculative" similar
27 allegations regarding where Google "*can* track" users (emphasis in original)).
28 [9] In ordinary usage, "device" refers to a physical object, and "attached" refers to the fastening of
   physical objects.  *See Google*, 2019 WL 6911951, at *6-7.

1   2017 WL 6387764, at \*4-6 (N.D. Cal. Dec. 14, 2017) (same).  Just as this Court and every other

2   court has held, CIPA does not apply to collection of location information by a mobile application.

3   The FAC does not and cannot allege otherwise.[10]

4           **C.      Plaintiffs Fail to State an Unjust Enrichment Claim**

5           Plaintiffs' unjust enrichment claim fails because "[i]n California, there is not a standalone

6   cause of action for 'unjust enrichment.'"  *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762

7   (9th Cir. 2015).  Nor can the claim appropriately be construed as a quasi-contract claim because

8   here, undisputedly, "an enforceable, binding agreement exists defining the rights of the parties."

9   *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see also*

10  *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (holding that a

11  plaintiff cannot plead an unjust enrichment claim where, as here, there is no dispute that an

12  express contract exists).  As Plaintiffs acknowledge, the contractual Terms of Service and Data

13  Policy govern the relationship between Facebook and its users.  *E.g.*, FAC ¶¶ 7, 21, 44.

14          Further, Plaintiffs do not allege facts establishing any entitlement to restitution.  Because,

15  as explained above, Plaintiffs have not alleged any unfair action by Facebook, any benefit

16  Facebook obtained from Plaintiffs' data was not unjustly obtained.  *See Girard*, 316 F. App'x at

17  563 (holding benefit obtained from "non-deceptive advertising does not entitle [a plaintiff] to

18  restitutionary relief"); *see also Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, No.

19  CV1701875MWFMRWX, 2017 WL 4286577, at \*8 (C.D. Cal. Sept. 20, 2017) (rejecting unjust

20  enrichment claim based on the same facts that fail to state claims based on misrepresentation);

21  *Cannarella v. Volvo Car USA LLC*, No. CV 16-6195-RSWL-JEMX, 2016 WL 9450451, at \*11

22  (C.D. Cal. Dec. 12, 2016) (same); *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111,

23  1133 (N.D. Cal. 2009) (same).

24  **V.      CONCLUSION**

25          Because further amendment would be futile, the FAC should be dismissed with prejudice.

26  ────────────────

27  [10] The FAC states that this issue is subject to a "pending motion to certify an order for
    interlocutory appeal" in the *Google* case (FAC ¶ 13 n.9), but this fact does not change that *this*

28  *Court* has already dismissed the exact claim, or explain why Plaintiffs have simply re-alleged the
    claim without substantive amendment.  Facebook reserves all rights.

1    DATED:  March 6, 2020                    Respectfully submitted,

2                                             MUNGER, TOLLES & OLSON LLP

3

4                                             By:   */s/ Laura D. Smolowe*

5                                                   ROSEMARIE T. RING
                                                    LAURA D. SMOLOWE
6                                                   ANDREW CATH RUBENSTEIN
                                                    ZOE BEDELL
7

8                                             *Attorneys for Defendant Facebook, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28